IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHEN ROSS BENNETT,                          Civ. No. 11-6129-AA

              Plaintiff,                       OPINION AND ORDER

        v.

OVERSEAS MILITARY SALES GROUP;
OVERSEAS MILITARY SALES COMPANY;
and OVERSEAS MILITARY SALES
ORGANIZATION,

              Defendants.

_____

Stephen R. Bennett
658 NE Jackson St.
Roseburg, OR 97470
      Pro Se Plaintiff

Scott Osborne
Mark Crabtree
Jackson Lewis, LLP
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
      Attorneys for defendants

1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Stephen Bennett, appearing pro se, has filed suit against defendants Overseas Military Sales Group ("OMSG"), Overseas Military Sales Organization("OMSO", and Overseas Military Sales Company ("OMSC"), asserting various claims stemming from defendants' alleged termination of plaintiff's employment contract.  Plaintiff brings this action alleging constructive discharge, breach of an implied covenant of good faith and fair dealing, fraud, unjust enrichment, and civil conspiracy.  Defendants have moved to dismiss on two grounds: lack of personal jurisdiction and failure to state a claim upon which relief may be granted.  For the reasons explained below, defendants' motion is GRANTED.

## FACTUAL BACKGROUND

When considering a motion to dismiss for lack of personal jurisdiction, the facts must be construed in the light most favorable to the nonmoving party.  Fed. R. Civ. P. 12(b)(2); Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).

Defendants OMSC and OMSO are Swiss-incorporated companies which sell automobiles to members of the U.S. military who are stationed overseas.  Together, defendants are known as Overseas

2 - OPINION AND ORDER

OMSG.[1]    OMSC contracts with Ford Motor Company, Chrysler Group, and the U.S. Army and Air Force Exchange Service ("AAFES") to sell vehicles.   OMSC administers the AAFES program on Ford and Chrysler's behalf, and also contracts directly with Honda and Harley Davidson.    OMSC has no sales personnel; rather, it contracts with OMSO, who hires third-party contractors to sell automobiles overseas.   Defendants do not maintain any offices or employees in Oregon, though vehicles are delivered to "pick-up points" within Oregon.

In 2009, plaintiff Stephen Bennett entered into an independent contractor agreement with OMSO, which provided that he would serve as a sales representative in Misawa, Japan.   The contract was drawn up outside of the United States, transmitted to plaintiff outside the United States, and executed in Asia. Because he moves often, plaintiff used his father's Roseburg, Oregon address as his mailing address.

From August 2009 to July 2010, plaintiff worked on commission as a car salesman, first in Misawa, Japan, and later in Kunsan, South Korea.    During his tenure as a sales representative in Japan, plaintiff inquired about entering into a new sales representative contract that would allow him to sell vehicles in Kunsan, South Korea.   Plaintiff stated that he would

---

[1] Plaintiff names OMSG as a defendant; however, OMSG is not an entity in and of itself but rather a collective term which refers to OMSC and OMSO.
3 - OPINION AND ORDER

enter into the South Korean contract only if OMSO agreed not to apply the termination clause of his Japanese contract, which would jeopardize his right to commissions on pending sales. Plaintiff wished to retain commissions on his Japan sales, although he agreed to waive his right to delivery fees.

On April 22, 2010, OMSO terminated plaintiff's Japanese contract when plaintiff was transferred to South Korea.  OMSO's action triggered the contract's termination clause, which allegedly resulted in plaintiff's forfeiture of $13,000 in pending commissions.  Plaintiff allegedly also owed OMSO $5,100 in advanced commissions after his Japan sales were cancelled. When plaintiff contested this termination clause, OMSO sent a letter terminating plaintiff's employment contract altogether to plaintiff's father's address in Roseburg, Oregon.

Plaintiff then filed suit in this court, alleging constructive discharge, breach of an implied covenant of good faith and fair dealing, fraud, unjust enrichment, and civil conspiracy.  Defendants move to dismiss on the basis that this court lacks personal jurisdiction over defendants, or, alternatively, that plaintiff has not stated a claim upon which relief may be granted.

## DISCUSSION

To determine whether personal jurisdiction is proper, a federal court examines the long-arm statute of the state in

4 - OPINION AND ORDER

which it sits. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 469 (1985). Oregon's long-arm statute provides that an Oregon court may exercise jurisdiction over a non-resident defendant as long as "it is not inconsistent with the Constitution of [Oregon] or the Constitution of the United States." ORCP 4(L). As a result, this court must apply the Due Process Clause to determine whether this court has jurisdiction over the defendant.

Courts have interpreted the Due Process Clause to mean that personal jurisdiction is proper when a defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Corp. v. Washington, 326 U.S. 313, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940); see also Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring) (stating that to satisfy due process, a defendant must have "fair warning that a particular activity may subject [the defendant] to the jurisdiction of a foreign sovereign"). These minimum contacts are created when "the defendant himself [creates] a substantial connection with the forum state." Burger King, 471 U.S. at 475.

For example, the defendant in International Shoe was a corporation based in St. Louis, Missouri. Int'l Shoe, 326 U.S. at 313. Though the company did not maintain an office in

5 - OPINION AND ORDER

Washington State, it employed eleven salesmen who resided and conducted business there. Id. at 313-14. These salesman showed samples to potential customers and forwarded order requests to the St. Louis office. Id. at 314. When the plaintiffs sued the defendant in Washington State, the Supreme Court ruled that the defendant's contacts with Washington State were sufficient to allow personal jurisdiction. Id. at 320. It stated that the contacts were "continuous and systematic" and reasoned:

> [T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

Id. at 319.

Courts have followed this mandate and require that plaintiffs establish minimum contacts for non-resident defendants in order to establish personal jurisdiction. See, e.g., Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 589-91 (9th Cir. 1986). Courts distinguish between two types of personal jurisdiction: general jurisdiction and specific jurisdiction. See generally Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408 (1984) (analyzing a helicopter company's contacts with Texas first in the context of general jurisdiction and then in the context of specific jurisdiction).

6 - OPINION AND ORDER

## A. General Jurisdiction

To merit general jurisdiction, a defendant must exercise "continuous and systematic" contacts with the forum state. Id. at 415 (quoting Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 438 (1952)); see also Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (1986)(stating that the general jurisdiction standard is high); Gates Learjet Corp v. Jensen, 743 F.2d 1325, 1331 (9th Cir. 1984) (for general jurisdiction, contacts must approximate physical presence in the forum). If such contacts are present, a court may assert general jurisdiction even if plaintiff's cause of action is unrelated to the defendant's activities in the forum. Helicopteros, 466 U.S. at 414 n. 9.

In Helicopteros, a helicopter company was sued in Texas after one of the company's helicopters crashed in Colombia, killing several people. Id. at 410. Although the company was based in Colombia, it occasionally purchased helicopters and equipment from Texas, flew pilots to Texas for training, and flew personnel to Texas for technical consultations. Id. at 411. The court ruled that such contacts did not merit general jurisdiction, as they were a "brief presence" rather than a "significant contact." Id. at 418; see also Kulko v. Cal. Sup. Ct., 436 U.S. 84, 93 (1978) (holding that one seventy-two-hour stopover and one twenty-four-hour stopover within forum state do not confer general jurisdiction).

Here, plaintiff asserts that defendants' minimum contacts stem from two sources: (1) defendants' "delivery points" located in several cities throughout Oregon, and (2) the letter giving plaintiff notice of the termination of his employment contract, which was mailed to a Roseburg, Oregon address. The letter, which was a singular occurrence, fails the "continuous and systematic" requirement set forth in Helicopteros and International Shoe. Likewise, goods which pass through a state in transit do not implicate minimum contacts. Lakeside Bridge & Steel Co. v. Mountain State Constr. Co., 597 F.2d 596, 604 n. 14 (7th Cir. 1979).

In this case, defendants' connections to Oregon are of a very limited nature. The connections described here are of a similar duration as those described in Helicopteros and Kulko. Like the goods in Lakeside, the goods[2] here passed through Oregon in transit; thus, asserting personal jurisdiction here would strain the boundaries of due process. As a result, general jurisdiction is inappropriate.

B. Specific Jurisdiction

---

[2] Plaintiff maintains that these pickup points exist in Beaverton, Medford, etc. Defendants contest the existence of these pickup points, saying that there are no deliveries made to Oregon whatsoever. Smith Decl. ¶ 6; Daniels Decl. ¶ 5. For purposes of this motion, I accept plaintiff's factual assertions but find them irrelevant.

Specific jurisdiction is narrower than general jurisdiction in that the cause of action must be related to defendant's activities in the forum. See Burger King, 471 U.S. at 472-74. Ninth Circuit courts employ a three-factor test to determine whether specific jurisdiction is appropriate, including: (1) whether defendant has purposefully availed itself of the protections of the forum state; (2) whether the cause of action is related to defendant's activities within the forum; and (3) whether it would be unreasonable to require defendant to litigate in the contested forum. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) (citing Cybersell, Inc. v. Cybersell, Inc, 130 F.3d 414, 416 (9th Cir. 1997)).

1.    Purposeful Availment

In contract cases, courts examine whether the contract had a "substantial connection" with the forum state. McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957) (reasoning that a forum state has "a manifest interest in providing effective means of redress for its residents", and that "these residents would be at a severe disadvantage if they were forced to follow [defendants] to a distant State in order to hold it legally accountable").

The Ninth Circuit has adopted this "substantial connection" requirement. See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,

9 - OPINION AND ORDER

557 F.2d 1280, 1287 (9th Cir. 1977); compare Holland Am. Line, Inc. v. Wärtsilä N. Am., Inc., 485 F.3d 450, 460-61 (9th Cir. 2007) (denying specific jurisdiction for an action alleging negligence and breach of contract because the only connection with the forum state was that defendant had sent out advertising materials that were not targeted at the forum). In Data Disc, a California company, Data Disc, sued a Virginia company, STA, for breach of contract after STA failed to pay the purchase price due. Data Disc, 557 F.2d at 1283. The court ruled that California jurisdiction was proper because the contract was negotiated and formed in California. Id. at 1288-89. Jurisdiction was also proper because Data Disc conducted a significant amount of its business in California, and the primary effects of the breach were felt there. Id.

In contrast, defendants and plaintiff did not consummate their contract in Oregon, and defendants have taken no action to avail themselves of the protections of this state. Unlike the plaintiffs in McGee, Data Disc, or Holland, plaintiff is not a resident of the forum state, he does not conduct business here, and the primary effects of the alleged breach are not felt here. Rather, plaintiff is a resident of Japan; as a result, the primary effects of the termination of plaintiff's employment are felt in Japan. Even if the court found that plaintiff's fraud claim implicated the "effects test" used in tort claims,

10 - OPINION AND ORDER

defendants' allegedly fraudulent activities were not directed at a resident of this forum. See Calder v. Jones, 465 U.S. 783, 788-89 (1984). Thus, OMSG's contacts with this forum do not constitute purposeful availment.

2. Cause of Action Related to Forum Activities

The Ninth Circuit employs a "but-for" standard to determine whether the claim arose from the defendant's forum-related activities. Ziegler v. Indian River Cnty., 64 F.3d 470, 474 (1995); compare Terracom v. Valley Nat. Bank, 49 F.3d 555, 561 (9th Cir. 1995) (rejecting an application of the but-for standard because defendant's approval of a certificate was not the sole cause of the events leading to the plaintiff's claim). In other words, courts ask whether the harm would have occurred but for the forum-related activities of the defendant. Ziegler, 64 F.3d at 474. Here, all of plaintiff's claims arise from a single action—defendants' decision to terminate plaintiff's employment contract. However, the termination of plaintiff's contract did not occur in Oregon, though plaintiff received notice in Oregon. Rather, the challenged conduct occurred in Asia. Plaintiff's employment contract would have been terminated whether or not he received notice of the termination in Oregon. As a result, the plaintiff cannot say that he would not have suffered harm but for defendants' decision to mail notice of the termination to plaintiff's father in Oregon.

11 - OPINION AND ORDER

3.    Reasonableness of Haling Defendant into Court

The third factor is the reasonableness of haling the defendant to defend against a suit in the contested forum. Panavision Int'l, LP v. Toeppen, 141 F.3d 1316, 1320 (1998); see Kulko, 436 U.S. at 92 (stating that the facts of each case must always be evaluated in determining whether the defendant has sufficient minimum contacts with the forum). When evaluating whether exercise of specific jurisdiction is reasonable, the court examines seven factors, including:

(1) the extent of a defendant's purposeful interjection;
(2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Burger King, 471 U.S. at 476-77 (citing Worldwide Volkswagen, 444 U.S. at 292). According to the Ninth Circuit, "no one factor is dispositive; a court must balance all seven." Panavision, 141 F.3d at 1323 (citing Core-Vent Corp. v. Nobel Indus., IB, 11 F.3d 1482, 1488 (1993)).

Here, the majority of the factors support the conclusion that it would be unreasonable for this court to assert jurisdiction. First, courts look to the degree of the defendant's interjection into the forum. Panavision, 141 F.3d at 1323 (citing Ins. Co. of N. Am. v. Marina Salina Cruz, 649

F.2d 1266, 1271 (9th Cir. 1981)). The Panavision court ruled that the defendant corporation had purposefully interjected itself because it had fraudulently registered trademarks that belonged to residents of the forum state, and had sent an extortion letter to residents of the forum state. Panavision, 141 F.3d at 1323. Here, defendants' interjection consists of one letter sent to plaintiff's father's address. The difference in degree is substantial and does not merit application of the standard.

Second, courts examine whether forcing defendant to defend against a suit in the forum would prove an excessive burden. Id. (citing Caruth v. Int'l. Psychoanalytical Ass'n, 59 F.3d 126, 128-29 (9th Cir. 1995)). In Panavision, forcing an Illinois defendant to defend a suit in California was considered an excessive burden. Panavision, 141 F.3d at 1323. Here, the distance at issue is far greater (forcing a Swiss defendant to defend against a suit in Oregon). Plaintiff argues that he is more inconvenienced because he must try this action from South Korea, while the defendant must work from Switzerland. However, courts look to the burden put on the defendant, not on the plaintiff, in adjudicating these matters. See id.

Third, it would offend the sovereignty of the jurisdiction where the harm occurred (Japan, South Korea, or Switzerland) to try this case here. To determine whether asserting jurisdiction

13 - OPINION AND ORDER

would offend another forum's sovereignty, the Panavision court examined whether both fora use the same legal framework in analyzing the facts. Id. Swiss, South Korean or Japanese court use different legal standards and procedures than those used in Oregon.[3] As a result, it would most likely offend the sovereignty of those fora to try this case here.

Fourth, Oregon has little interest in adjudicating this issue. The Ninth Circuit maintains that "[a forum state has] a strong interest in providing an effective means of redress for its residents tortuously injured." Gordy v. Daily News, LP, 95 F.3d 829, 836 (9th Cir. 1988). Here, however, plaintiff is not a resident of the forum state and the contractual relationships were entered into outside of Oregon. As a result, the Gordy maxim is inapplicable.

Fifth, it would be inefficient to resolve plaintiff's claims here. The Panavision court thought it unreasonable to litigate in California because all of the applicable evidence

---

[3] Switzerland, South Korea, and Japan use a civil law system, as opposed to the common law system used in the United States. As civil law does not incorporate case law, differing civil codes notwithstanding, it is almost certain that any one of these courts will apply a vastly different legal standard. See generally Max Rheinstein, Common Law and Civil Law: An Elementary Comparison, 22 REV. JUR. U.P.R. 90 (1953); Robert G. Storey, Korean Law and Lawyers, 41 A.B.A. J. 629, 630 (1955) (detailing the Korean civil law tradition); Jeffrey Catanzaro et al., Asia and Pacific Law, 40 INT'L L.J. 515, 516 n. 1 (detailing the Japanese civil law tradition); Caroline Deletra & Julien Perrin, Offshore: Switzerland, 15 TRUSTS & TRUSTEES 700, 700 (2009) (detailing the Swiss civil law tradition).

and witnesses were located in Illinois. Panavision, 141 F.3d at 1323-24. Here, almost all applicable evidence and witnesses are located in Korea and Japan — a far greater distance than the one in Panavision. Thus, going forward with this action here would be grossly inefficient.

Sixth, courts place little weight on the plaintiff's inconvenience when evaluating the convenience and effectiveness of relief. Ziegler, 64 F.3d at 476. The Panavision court deemed the fact that it was more costly for the plaintiff to litigate than the defendant a non-factor. Panavision, 141 F.3d at 1324. The same principle applies here.

Finally, courts examine the availability of alternate fora. Id. at 1324. Here, plaintiff has alternative fora available to him in the Swiss, Japanese, or Korean court systems. Thus, after having reviewed these factors and finding that the majority weigh against asserting jurisdiction, I am convinced that it would not be reasonable to hale defendants into court here.

As a result, due to the lack of minimum contacts necessary for either general or specific jurisdiction, I find that this court does not have personal jurisdiction over defendants.

CONCLUSION

For the reasons given above, defendant's motion to dismiss (doc. 9) is GRANTED. The Clerk is directed to enter Judgment in accordance with this opinion and order.

IT IS SO ORDERED.

Dated this ___ day of November, 2011.

Ann Aiken
United States District Judge

16 - OPINION AND ORDER